UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EASTERN CR ACQUISITION INC. et al.,

                  Plaintiffs,                Case No. 2:24-cv-10343

v.                                   Honorable Susan K. DeClercq
                                   United States District Judge

CHRISTOPHER DeLUSO,

                  Defendant.

_____ /

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO
DISMISS (ECF No. 8), GRANTING PLAINTIFFS' MOTION TO COMPEL
ARBITRATION (ECF No. 10), AND DENYING PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION (ECF No. 12)**

When Plaintiffs Eastern CR Acquisition Inc. ("ECRA") and Eastern

Wholesale Fence, LLC ("EWF") fired Defendant Christopher DeLuso from his role

as Chief Revenue Officer, the parties remained bound by two contracts: (1) a

Stockholders Agreement governing DeLuso's shares in ECRA, which he retained

even after termination, and (2) a Transaction Bonus Agreement, under which he

remained eligible for a bonus from EWF. Both contracts came with significant

restrictive conditions, including noncompetition and nonsolicitation clauses.

After DeLuso was fired, he began working for a competitor and soliciting

EWF customers. Plaintiffs notified him that he had breached the contracts, but

DeLuso refused to leave his new job, asserting that the restrictive covenants were

unenforceable. In response, Plaintiffs brought this suit under the Federal Arbitration Act for injunctive relief and to compel arbitration.

Now before the Court are three motions: (1) DeLuso's motion to dismiss for lack of personal jurisdiction, (2) Plaintiffs' motion to compel arbitration, and (3) Plaintiffs' motion for preliminary injunction in aid of arbitration. For the reasons stated below, this Court will deny the motion to dismiss, grant the motion to compel arbitration, and deny the motion for preliminary injunction.

## I.    BACKGROUND

The following allegations come from Plaintiffs' verified complaint, ECF No. 1. For more than a decade, Defendant DeLuso—a North Carolina resident—worked for EWF, a limited-liability fencing company formed in Delaware and wholly owned by ECRA.[1] *Id.* at PageID.3. DeLuso began his career with EWF as its Director of Sales and ultimately worked as the Chief Revenue Officer. *Id.* at PageID.6. As Chief Revenue Officer, DeLuso's responsibilities included "driving sales, new business, and cultivating new market share while maintaining all existing business." *Id.* at PageID.6–7. He also oversaw EWF's sales team and serviced many of EWF's largest customers. *Id.* at PageID.7. In his position, DeLuso had access to EWF's trade secrets, customer information, pricing information, financial plans, business plans,

---

[1] ECRA is incorporated in Delaware and has its principal place of business in Medford, New York. ECF No. 1 at PageID.3.

business concepts, supplier information, and other confidential and proprietary information. *Id.*

In 2021, DeLuso became a shareholder in ECRA, EWF's parent company. *Id.* at PageID.8. As a condition of his investment, DeLuso signed a Stockholders Agreement and Joinder with ECRA (Stockholders Agreement). *Id.*; ECF Nos. 1-2; 1-3. The Stockholders Agreement included nondisclosure, noncompetition, and nonsolicitation provisions. ECF Nos. 1 at PageID.9; 1-2 at PageID.53–55. The Stockholders Agreement states that it should be governed and construed according to Delaware law. ECF No. 1-2 at PageID.65. It also includes an arbitration provision that selects Oakland County, Michigan as the forum for arbitration. ECF No. 1 at PageID.12; 1-2 at PageID.65.

DeLuso also signed a Transaction Bonus Agreement (TBA) with EWF so that he could participate in a bonus pool. *Id.*; ECF No. 1-4. Like the Stockholders Agreement, the TBA contained nondisclosure, noncompetition, and nonsolicitation provisions. ECF Nos. 1 at PageID.14–17; 1-4 at PageID.96–98. The TBA states that Delaware law governs and that any suit arising out of the TBA may be brought "in the federal courts of the United States or the courts of the State of Michigan." ECF No. 1-4 at PageID.99. The TBA also includes an integration clause, noting that the agreement "embodies the complete agreement and understanding among the parties and supersedes and preempts any prior understandings, agreements or

representations by or among the parties, written or oral, which may have related to the subject matter hereof in any way." *Id.* According to its terms, the TBA "shall terminate upon the earlier to occur of (i) the Employee's termination of employment from the Company, and (ii) payment of the Transaction Bonus." *Id.*[2]

In October 2023, EWF terminated DeLuso "due to poor performance." ECF No. 1 at PageID.19. Plaintiffs allowed DeLuso to keep his shares in ECRA and participate in the EWS bonus pool, allegedly leaving the Stockholders Agreement and TBA in effect. *Id.* at PageID.19–20. Plaintiffs claim that upon his termination, DeLuso retained his work phone and refused to return it for over a week, first "transferring all of his contacts – including his business contacts – to his new phone." *Id.* at PageID.20.

On December 5, 2023,[3] DeLuso entered into an Agreement and General Release (the Release) with EWF. *Id.* at PageID.18; ECF No. 1-5 at PageID.107. The Release provides that DeLuso remains eligible to receive a transaction bonus according to the terms of the TBA and that he may retain his shares and remains bound by the Stockholders Agreement. ECF No. 1-5 at PageID.107–08. The Release

---

[2] The TBA appears to have been signed on November 22, 2023—almost one month after EWF terminated DeLuso. *See* ECF No. 1 at PageID.19. However, this fact goes unaddressed by the parties and ultimately does not affect this Court's analysis.

[3] In their verified complaint, Plaintiffs identify the date of the Release as December 4, 2023. ECF No. 1 at PageID.18. However, DeLuso's signature on the Release is dated December 5, 2023. ECF No. 1-5 at PageID.114. This Court recognizes the date on the Release itself as the correct effective date.

includes confidentiality provisions but does not explicitly contain noncompetition nor nonsolicitation provisions. *See id.* at PageID.111–12. The Release provides that it is governed by New York law, and that any suit arising out of the Release "shall be decided by an appropriate New York state or federal court and all such claims shall be adjudicated by a judge sitting without a jury." *Id.* at PageID.112–13. Finally, the Release includes the following integration clause:

> This Agreement sets forth the entire agreement between the parties hereto and, except for any previous agreements and understandings between the parties regarding the non-disclosure of confidential information which extend beyond Employee's term of employment (which shall remain in full force and effect), fully supersede any prior agreements or understandings between the parties, except that this Agreement does not supersede, modify, or cancel the Subscription Agreement or the Stockholders Agreement, except as expressly provided herein.

ECF No. 1-5 at PageID.113. As to the TBA specifically, the Release states that "[i]n the event of any conflict between the terms of [the Release] and the Transaction Bonus Agreement, the Transaction Bonus Agreement would control." *Id.* at PageID.107.

On January 25, 2024, DeLuso shared on LinkedIn that he was starting a new position as Director of North American Fence Sales for Barrette, one of EWF's direct competitors. ECF Nos. 1 at PageID.20; 1-6 at PageID.117. Plaintiffs allege that DeLuso's employment with Barrette is a breach of his non-competition obligations under both the Stockholders Agreement and the TBA. ECF No. 1 at

PageID.21. Plaintiffs further allege that DeLuso attended FenceTech, a national fencing industry trade show, in January, where he met with several EWF customers with whom he had previously worked while at EWF. *Id.* Plaintiffs argue that these contacts with EWF customers violated the nonsolicitation agreements of the Stockholders Agreement and the TBA. *Id.* at PageID.24.

On January 30, 2024, Plaintiffs notified DeLuso that he was in breach of the Stockholders Agreement and the TBA. *Id.* at PageID.25; ECF Nos. 1-7 at PageID.119–22; 1-8 at PageID.196–98. But DeLuso "declined to cease his activities in violation of his covenant obligations" and remains employed with Barrette. ECG No. 1 at PageID.25–26. In response, Plaintiffs served an arbitration demand on DeLuso on February 7, 2024. *Id.*; ECF No. 1-10 at PageID.245.

Plaintiffs also brought this suit under the Federal Arbitration Act, seeking to enjoin DeLuso from working for a competitor, soliciting EWF customers or employees, or disclosing Plaintiffs' confidential or proprietary information. ECF No. 1 at PageID.39. Plaintiffs allege that DeLuso breached the noncompetition and nonsolicitation covenants in both the Stockholders Agreement and the TBA. *Id.* at PageID.26–36.

Together with their verified complaint, Plaintiffs also filed an *ex parte* motion for a temporary restraining order. ECF No. 4. On February 21, 2024, District Judge Stephen J. Murphy III denied Plaintiffs' motion, finding that all four factors weighed

against granting the TRO. *Id.* at PageID.530–32.

On March 4, 2024, DeLuso moved to dismiss the complaint for lack of personal jurisdiction. ECF No. 8. On March 22, 2024, Plaintiffs moved to compel arbitration under the Federal Arbitration Act. ECF No. 10. On April 4, 2024, Plaintiffs moved for preliminary injunction in aid of arbitration. ECF No. 12.

## II.    MOTION TO DISMISS FOR LACK OF JURISDICTION

DeLuso has moved to dismiss for lack of personal jurisdiction. ECF No. 8. Plaintiffs respond that DeLuso consented to this Court's jurisdiction by agreeing to the Stockholders Agreement, which selected arbitration in Oakland County, Michigan as the only appropriate forum, and agreeing to the TBA, which allowed for litigation in any federal court or in the Michigan state courts. ECF No. 11 at PageID.807. As explained below, Plaintiffs are correct.

### A. Standard of Review

A Court may have personal jurisdiction over a party in two ways: general or specific jurisdiction. *See Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 501 (6th Cir. 2020).

"General jurisdiction exists when the defendant's affiliations with the forum state are 'so continuous and systematic as to render the defendant essentially at home' there." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Specific jurisdiction "depends on an affiliation between the

forum and the underlying controversy." *Id.* at 502 (quoting *Goodyear*, 564 U.S. at 919). For specific jurisdiction, (1) the defendant must be covered by the forum state's long-arm statute, and (2) exercising personal jurisdiction over the defendant must comport with due process. *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012). Both Michigan's long arm-statute and the Due Process Clause permit the exercise of personal jurisdiction over an individual who has consented to such jurisdiction through a forum-selection clause. MICH. COMP. LAWS. § 600.745(2); *Potomac Leasing Co. v. French Connection Shops, Inc.*, 431 N.W.2d 214, 216 (Mich. Ct. App. 1988); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985).

When considering a motion to dismiss for lack of personal jurisdiction a district court may either (1) decide the motion on affidavits alone; (2) permit discovery to help rule on the motion; or (3) conduct an evidentiary hearing to decide any remaining factual questions. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). When the court relies solely on affidavits, the plaintiff need only make a *prima facie* showing that personal jurisdiction exists. *Id.* In such a scenario, the pleadings and affidavits are read in the light most favorable to the plaintiff. *Id.* at 1459.

- 8 -

## B. Analysis

### 1. Basis for personal jurisdiction

Absent the TBA and Stockholders Agreement, this Court would not have general jurisdiction over DeLuso, given his limited contacts with the state of Michigan. He is a North Carolina resident who has only visited Michigan once, back when he was an EWF employee. ECF No. 8 at PageID.561. He certainly does not have the "systematic and continuous" contacts with the state to be essentially "at home" in Michigan. *Goodyear*, 564 U.S. at 919. Further, when he was served with process, he was neither present nor domiciled in Michigan, both of which would have conferred general jurisdiction under Michigan's long-arm statute. Mich. Comp. Laws § 600.701.

Nor are there sufficient "minimum contacts" for the Court to exercise specific jurisdiction over DeLuso. His only contacts with Michigan appear to predate the controversy in question: he only visited the state before he was fired from EWF and there are no allegations that he personally visited the state or contacted any employees or former clients in the state after his departure from EWF. ECF Nos. 8 at PageID.561; 11 at PageID.802. These connections are too unrelated to the cause of action to establish jurisdiction over DeLuso. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021).

Even so, this Court may exercise jurisdiction over DeLuso. Under Michigan's

long-arm statute and the federal Due Process Clause, a party may consent to general jurisdiction through a forum-selection clause. MICH. COMP. LAWS. § 600.745(2); *Potomac Leasing Co.*, 431 N.W.2d at 216; *Burger King Corp.*, 471 U.S. at 473 n.14. Here, DeLuso implicitly consented to jurisdiction when he agreed in the Stockholders Agreement to arbitrate in Oakland County—which is within the Eastern District of Michigan. ECF No. 11 at PageID.800. Further, DeLuso explicitly consented to this Court's jurisdiction in the TBA, which selected the Michigan state courts or any federal court as an appropriate forum. *Id.*

DeLuso argues that these provisions are insufficient to confer jurisdiction because both agreements were superseded, thereby negating both forum-selection clauses. ECF No. 14 at PageID.918–22.[4] He also argues that, even if the forum-selection clauses are valid, this Court should decline to enforce them because Michigan is not "a reasonably convenient place for the trial of the action." ECF No. 8 at PageID.549 (citing MICH. COMP. LAWS § 600.745(2)). This Court disagrees.

### 2. Enforceability of forum selection clauses

The forum-selection clauses contained in the Stockholders Agreement and the TBA are valid and enforceable. First, the Stockholders Agreement was not

---

[4] DeLuso first raised this argument as to the unenforceability of the Stockholders Agreement in his Response to Plaintiffs' Motion to Compel Arbitration. ECF No. 13 at PageID.904. He then raised the argument as to jurisdiction for the first time in his reply to his own motion to dismiss. ECF No. 14 at PageID.918–22.

superseded by the TBA, as they are between different parties and concern different subject matters. ECF No. 1-4 at PageID.99. Second, the Release does not supersede the Stockholders Agreement or the TBA, which leaves the forum-selection clauses of both agreements in place.

      a. Stockholders Agreement

The TBA did not supersede the Stockholders Agreement. The TBA's integration clause states that it "supersedes and preempts any prior understandings, agreements or representations by or among *the parties*, written or oral, which may have *related to the subject matter* hereof in any way." ECF No. 1-4 at PageID.99 (emphasis added). The parties to the TBA, per the contract's introduction, are EWF and DeLuso. *Id.* at PageID.93. By contrast, the parties to the Stockholders Agreement are ECRA, Eastern CR Holdco, LLC, and individual stockholders (including "Executives" and "Rollover Stockholders"). ECF No. 1-2 at PageID.44. Since the TBA does not include ECRA as a party, the TBA does not amend DeLuso's contractual obligations *with ECRA* or invalidate the contract's forum-selection clause.[5] ECF Nos. 1-2 at PageID.75; 1-4 at PageID.93.

Further, the TBA and the Stockholders Agreement cover unrelated subject

---

[5] In his Response to Plaintiffs' Motion to Compel Arbitration, DeLuso argues that the parties to the two agreements are actually the same, as ECRA and EWF are "alter egos." Because he did not raise this argument as to jurisdiction, this Court will not consider it here. But as discussed in Part III.B.3., *infra*, his alter ego theory is unavailing and thus would not change this Court's jurisdiction analysis.

matters: the Stockholders Agreement pertains to partial ownership of ECRA; the TBA pertains to eligibility in a bonus pool for EWF employees. *Compare* ECF No. 1-2 *with* ECF No. 1-4. While both may include similarly worded restrictions on competition and solicitation, the central subject matters of the agreements are unrelated. *Id.* As such, the TBA does not disturb the Stockholders Agreement in substance, nor does it affect the forum-selection clause.

In addition, the Release does not supersede the Stockholders Agreement. Indeed, by its own terms, the Release "does not supersede, modify, or cancel . . . the Stockholders Agreement . . . ." ECF No. 1-5 at PageID.113. Thus, the forum-selection clause of the Stockholders Agreement is still valid.

b.  Transaction Bonus Agreement

Likewise, the Release does not supersede the TBA. The Release states that "[i]n the event of any conflict between the terms of [the Release] and the Transaction Bonus Agreement, the Transaction Bonus Agreement would control." *Id.* at PageID.107. Therefore, the Release explicitly does not disturb the TBA's forum-selection clause.

Because the Stockholders Agreement and the TBA have not been superseded, and DeLuso consented to this Court's jurisdiction through the agreements' forum-selection clauses, this Court may properly exercise personal jurisdiction over DeLuso in this matter.

### 3. Convenience of Michigan as a forum

DeLuso next argues that even if this Court finds the forum-selection clauses valid, it should still decline to enforce them because Plaintiffs have not shown that Michigan "is a reasonably convenient place for the trial of the action." ECF No. 8 at PageID.549 (citing MICH. COMP. LAWS § 600.745(2)). This Court disagrees. Although Michigan may not be the *most* convenient place for a trial of this action, the standard to establish jurisdiction is whether the chosen forum is *reasonably* convenient. *Gen. Med. of La., P.C. v. Singletary*, No. 340298, 2019 WL 573385 (Mich. Ct. App. Feb. 12, 2019).

Courts applying Michigan law have imported factors from the *forum non conveniens* context (*Cray* factors) as a guide for whether a given forum is convenient. *Lease Acceptance Corp. v. Adams*, 724 N.W.2d 724, 734–35 (Mich. Ct. App. 2006) (citing *Cray v. Gen. Motors Corp.*, 207 N.W.2d 393, 399 (Mich. 1973)). However, these courts have also noted that the *Cray* factors are "neither mandatory nor exclusive in the determination of reasonable convenience." *ViSalus, Inc. v. Smith*, No. 13-cv-10631, 2013 WL 2156031 (E.D. Mich. May 17, 2013). Trial courts use their discretion to weigh these factors. *Lease Acceptance Corp.*, 724 N.W.2d at 733.

The *Cray* factors include:

      1.  The private interest of the litigant.
              a.  Availability of compulsory process for attendance of

       unwilling and the cost of obtaining attendance of willing witnesses;

    b. Ease of access to sources of proof;

    c. Distance from the situs of the accident or incident which gave rise to the litigation;

    d. Enforcibility [sic] of any judgment obtained;

    e. Possible harassment of either party;

    f. Other practical problems which contribute to the ease, expense and expedition of the trial;

    g. Possibility of viewing the premises.

2. Matters of public interest.

    a. Administrative difficulties which may arise in an area which may not be present in the area of origin;

    b. Consideration of the state law which must govern the case;

    c. People who are concerned by the proceeding.

3. Reasonable promptness in raising the plea of Forum non conveniens.

*Cray v. Gen. Motors Corp.*, 207 N.W.2d 393, 399 (Mich. 1973).

Courts considering the convenience of Michigan as a forum have given special weight to the presence of witnesses and evidence in the forum state. *See, e.g.*, *ViSalus, Inc.*, 2013 WL 2156031 (E.D. Mich. May 17, 2013) ("As can be seen for the consideration of the [*Cray* factors], including the location of Plaintiff and numerous witnesses in Michigan, the easy accessibility of electronic and physical evidence . . . Michigan is a reasonably convenient place for trial"); *Rolls-Royce Sols. Am. Inc. v. ACS Mfg., Inc.*, 619 F. Supp. 3d 756, 771 (E.D. Mich. 2022) ("[This] Court found that Michigan was neither a reasonably convenient nor logical forum because none of the witnesses, evidence . . . involved in this case are in Michigan").

In light of this emphasis on witnesses and evidence, here the factors slightly weigh in favor of finding that Michigan is a reasonably convenient forum. Plaintiffs point to at least two witnesses who are located in Michigan, both of whom would provide material testimony.[6] Plaintiffs also assert that they will be able to bring other party witnesses and evidence to Michigan. *Id.* at PageID.815–17, 819. Further, neither party points to any physical or documentary evidence that could not be *produced in or brought to* Michigan. *Id.*; *see also* ECF No. 8 at PageID.550 (arguing that nearly all evidence is located outside of Michigan but not identifying any hurdles to producing that evidence in Michigan). And although DeLuso and other witnesses may be out of state, this is not enough to make the forum so inconvenient that it would divest this Court of jurisdiction. *See Umlaut, Inc. v. P3 USA, Inc.*, No. 2:19-cv-13310, 2020 WL 4016098 (E.D. Mich. July 15, 2020). Finally, it should be noted that there does not appear to be a strong argument for a better alternative forum. Although not specifically a factor in *Cray* or in the language of Mich. Comp. Laws § 600.745(2), "the Michigan Court of Appeals has imported the *forum non conveniens* analytical framework into the convenience analysis . . . and that framework does compare the relative convenience of alternative fora." *Rolls-Royce,*

---

[6] Plaintiffs' witnesses include Steve LaBarre, who could testify to the formation and interpretation of the Stockholders Agreement and the content of his communications about the business with DeLuso, and Dave Matthews, who could testify to the formation and interpretation of the TBA. ECF No. 11 at PageID.801–02, 815–16.

619 F. Supp. 3d at 772.

Given that Plaintiffs have identified important witnesses located in Michigan, there are likely no significant hurdles bringing any physical evidence or records to Michigan, and there is no alternative forum that is clearly more convenient, the Court finds that Michigan is a reasonably convenient forum for this matter.

### 4. Breadth of the TBA's forum selection clause

Alternatively, DeLuso argues that the TBA's forum-selection clause is too broad to be enforceable. ECF No. 8 at PageID.554–56. Unlike the arbitration clause in the Stockholders Agreement, which specifies the forum as Oakland County, Michigan, ECF No. 1-2 at PageID.65, the TBA selects any federal court or any Michigan state court. ECF No. 1-4 at PageID.99. According to DeLuso, he cannot have validly consented to any given federal court's jurisdiction under such a broad clause. ECF No. 8 at PageID.555–56.

This Court is unconvinced. Parties have been found to consent under such broad clauses—including under those providing even less notice of the ultimate fora. *See Preferred Cap., Inc. v. Assocs. in Urology*, 453 F.3d 718, 724 (6th Cir. 2006) (finding that defendant consented to personal jurisdiction in Ohio by agreeing to a nationwide forum-selection clause because defendant was "on notice practically from the inception of the agreements that any disputes would be litigated in Ohio."). Here, even though the clause provided for jurisdiction in any federal court, DeLuso

- 16 -

was effectively on notice that a federal court in Michigan was a likely forum—given that the same clause also specified the Michigan state courts. *See* ECF Nos. 1-2 at PageID.65; 1-4 at PageID.99. Although DeLuso points to cases where courts have declined to exercise personal jurisdiction under broad forum-selection clauses, ECF No. 8 at PageID.554–55, those cases are not binding on this Court and are inconsistent with the above-mentioned Sixth Circuit precedent. *See, e.g.*, *Redrock Trading Partners, LLC v. Baus Mgmt. Corp.*, No. CV 113-043, 2014 WL 5106998 (S.D. Ga. Oct. 10, 2014). Thus, this Court finds that the forum-selection clause in the TBA is not too broad to confer jurisdiction. And, in any event, the Stockholders Agreement's forum-selection clause validly grants jurisdiction on its own. *See* Part II.B.2., *supra*.

Because the forum-selection clauses of the Stockholders Agreement and the TBA are valid and enforceable, and because Michigan is a reasonably convenient forum for the arbitration and litigation of this matter, this Court has personal jurisdiction over DeLuso, and his motion to dismiss for lack of personal jurisdiction will be denied.

### III. MOTION TO COMPEL ARBITRATION

Having determined that this Court may exercise personal jurisdiction over DeLuso, the Court turns to Plaintiffs' motion to compel arbitration. Plaintiffs seek an order compelling the Parties to arbitrate their dispute, arguing such arbitration is

required based on the arbitration clause in the Stockholders Agreement. ECF No. 10. DeLuso opposes arbitration, arguing that the TBA superseded the prior agreement's arbitration clause and that the clause's cost-splitting provisions are unenforceable as a matter of law. ECF No. 13. This Court finds that the arbitration clause in the Stockholders Agreement is valid and not superseded by the TBA or the Release. As such, this Court will compel arbitration of Counts I and II of the verified complaint, staying Counts III and IV pending arbitration.

## A. Standard of Review

For claims arising under a valid arbitration agreement, the FAA "mandates that district courts shall direct the parties to proceed to arbitration" on those issues. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). A party may invoke arbitration by (1) requesting a stay of the proceedings under § 3 of the FAA while any referable issue is arbitrated and by (2) moving under § 4 for an order compelling arbitration consistent with the arbitration agreement. *Boykin v. Fam. Dollar Stores of Mich., LLC*, 3 F.4th 832, 836–37 (6th Cir. 2021).

The FAA "favor[s] arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Therefore, when the court finds that an arbitration agreement was validly formed under the applicable state law, the court *must* order arbitration. *See Hergenreder v. Bickford Senior Living Grp., LLC*, 656

F.3d 411, 416 (6th Cir. 2011); *see also Boykin*, 3 F.4th at 839.

"If the making of the arbitration agreement . . . [is] in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. "To show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).

## B. Analysis

### 1. This Court has jurisdiction to compel arbitration.

DeLuso's first objection to Plaintiffs' motion to compel arbitration is rooted in his assertion that this Court lacks personal jurisdiction over him. As articulated above, jurisdiction is proper in this Court. *See* Part II, *supra*. Therefore, this Court may compel the Parties to arbitrate their disputes according to the terms of a valid arbitration agreement.

### 2. Scope of the agreement to arbitrate.

Plaintiffs request that this Court compel arbitration as to Counts I and II of the verified complaint, both of which allege violations of the Stockholders Agreement. ECF No. 10 at PageID.576. Section 25 of the Stockholders Agreement states that "[a]ny controversy, dispute or claim arising out of or relating in any way to this Agreement or the other agreements contemplated hereby or the transactions arising hereunder or thereunder that cannot be resolved by negotiation shall be settled

exclusively by arbitration in Oakland County, Michigan." *Id.* at PageID.582; ECF No. 1-2 at PageID.65.

Here, Counts I and II undoubtedly arise out of the Stockholders Agreement and thus fall within the scope of the agreement. In substance, Plaintiffs allege that DeLuso's conduct in working for Barrette and soliciting EWF customers violates the Stockholders Agreements' noncompetition and nonsolicitation clauses. ECF No. 1 at PageID.26–32. By the plain language of the Stockholders Agreement, these claims are within the agreement's scope and its included arbitration clause.

### 3. *Validity of arbitration agreement*

Under the FAA, this Court must order arbitration when the claims are subject to a valid arbitration agreement. *Dean Witter Reynolds, Inc.*, 470 U.S. at 218. As discussed above, Counts I and II arise under the Stockholders Agreement, which contains an arbitration provision. *See* ECF No. 1 at PageID.26–32. Therefore, this Court may decline to order arbitration only if DeLuso can show a genuine issue of material fact as to the validity of the arbitration agreement under the appropriate state law of contract formation. *See* 9 U.S.C. § 4; *see also Boykin*, 3 F.4th at 838.

The two contracts at issue here—the Stockholders Agreement and the TBA— both specify that Delaware law governs.[7] ECF Nos. 1-2 at PageID.65 (Stockholders

---

[7] Although it appears clear on the face of the Agreement that Delaware law applies, the parties have not presented any argument or authority to suggest that Michigan

Agreement); 1-4 at PageID.99 (TBA). Therefore, this Court reviews the enforceability of the arbitration clause under Delaware law, which states that a valid contract requires (1) intent to be bound, (2) sufficiently definitive terms, and (3) consideration. *Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010).

A plain reading of the arbitration clause leads this Court to conclude that it is facially enforceable. The Stockholders Agreement, signed by ECRA and DeLuso, demonstrates an intent by both parties to be bound. ECF Nos. 1-2 at PageID.69, 1-3 at PageID.91; *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1230 (Del. 2018) ("where the putative contract is in the form of a signed writing, that document generally offers the most powerful and persuasive evidence of the parties' intent to be bound") (first citing *Seiler v. Levitz Furniture Co. of E. Region*, 367 A.2d 999, 1005 (Del. 1976); and then citing *Osborn*, 991 A.2d at 1158-59). And its terms, at least as to arbitration and dispute resolution, are sufficiently definitive. *See Smash v. Dover Downs, Inc.*, No. 21-1568, 2022 WL 2966431, at *2 (D. Del. July 27, 2022) (enforcing similar arbitration terms as sufficiently definite). Finally, there is consideration here, as courts applying Delaware law consider mutual assent to arbitrate to be adequate consideration. *Id.*

---

law would reach a different result. Therefore, this Court "need not resolve conflict of law issues when Michigan law is consistent with the law of other forums and the asserted conflict is 'false.'" *Jilson v. Elrod*, No. 21-cv-11878, 2022 WL 17683111, at *6 (E.D. Mich. Dec. 14, 2022) (citing *CenTra, Inc. v. Estrin*, 538 F.3d 402, 409 (6th Cir. 2008)).

Here, DeLuso does not assert that any of these elements are missing as to the formation of the Stockholders Agreement. *See generally* ECF No.13 Rather, he simply argues that it later was superseded by the TBA and then by the Release. ECF No. 13 at PageID.905. He contends that this entitles him to "a jury trial as to whether a written agreement to arbitration exists between Plaintiffs and him." *Id.* at PageID.903. However, as the Court discussed earlier, the TBA does not supersede the Stockholders Agreement because it is between different parties and concerns different subject matter. *See* Part II, *supra*. And by its own terms, the Release does not supersede either agreement as it explicitly leaves the Stockholders Agreement intact and states that in a conflict with the TBA, the TBA's terms control. *Id.* However, DeLuso additionally argues that: (1) ECRA and EWF are "alter egos" and thus the Stockholders Agreement and the TBA are between the same parties, and (2) EWF has no right to compel arbitration. ECF No. 13 at PageID.904–09.

DeLuso claims that he has raised a genuine issue of material fact as to the arbitration agreement by alleging that ECRA and EWF are mere "alter egos" and thus the parties to the Stockholders Agreement and the TBA are the same. ECF No. 13 at PageID.904-07. However, this argument does not prevent arbitration for two reasons. First, DeLuso has not presented enough evidence to create a genuine issue of material fact as to whether EWF is an alter ego of ECRA, or vice versa. Second, even if the plaintiffs were alter egos, DeLuso still has not demonstrated that the

- 22 -

subject matters of the two agreements are the same so as to allow a jury to find the TBA supersedes the Stockholders Agreement.

Under Delaware law, an "alter ego theory" must be proven by evidence that a parent company and its subsidiary "operate[] as a single economic entity such that it would be inequitable for this Court to uphold a legal distinction between them." *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 707 (Del. Ch. 2021) (quoting *Mabon, Nugent & Co. v. Texas Am. Energy Corp.*, No. CIV. A. 8578, 1990 WL 44267 (Del. Ch. Apr. 12, 1990)) (alteration in original). To justify "piercing the corporate veil" and treating the two entities as the same, "the corporation must be a sham and exist for no other purpose than as a vehicle for fraud." *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999). No such showing has been made here. A mere parent-subsidiary relationship does not create a genuine issue of fact that ECRA and EWF are legally the same. *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 271 n.15 (D. Del. 1989). As such, this Court finds that DeLuso has failed to show that the parties to the Stockholders Agreement and the TBA are alter egos under Delaware law, and he has not presented sufficient evidence to warrant a jury trial on the issue.

Moreover, regardless of the parties to the agreements, the subject matters of the two agreements are clearly distinct, and the existence of similar restrictive covenants in the two contracts does not render them the same. *See* Part II, *supra*.

DeLuso also fails to present any evidence showing a genuine issue of material fact as to the similarity of subject matter between the Stockholders Agreement and the TBA. As such, he is not entitled to a jury trial on that issue either.

Because neither the TBA nor Release supersede the arbitration agreement in the Stockholders Agreement, and because DeLuso has failed to present a genuine issue of material fact to the contrary, this Court will compel arbitration over DeLuso's objections. No reasonable jury could find that a valid agreement to arbitrate does not exist. As such, the FAA requires that this Court send Counts I and II to arbitration.

As to DeLuso's opposition to EWF's participation in arbitration, this Court notes that EWF *is* party to the Stockholders Agreement. ECF No. 1-2, PageID.75. Per the terms of the Stockholders Agreement, any party, including the Rollover Stockholders (which include EWF), "shall be entitled to enforce their rights" under the agreement. ECF No. 1-2 at PageID.64. To be clear, Plaintiffs did not address this argument in their reply. *See* ECF No. 15. However, this Court is satisfied that there is a valid arbitration agreement between the parties, including EWF, as to the obligations of the Stockholders Agreement. Thus, this argument will not bar arbitration, nor will EWF be prevented from participation in arbitration.

### 4. Enforceability of cost-sharing provision

Finally, DeLuso argues that the cost-splitting provision in the Stockholders

Agreement is unenforceable. ECF No. 13 at PageID.909. To the extent DeLuso is arguing that the entire arbitration agreement should be rendered invalid and unenforceable on the basis of the cost-sharing provision, this Court disagrees. Importantly, the Stockholder's Agreement includes the following severability provision:

> 19. Severability. Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid, illegal or unenforceable in any respect under any applicable law, such provision shall be ineffective only to the extent of such prohibition, invalidity, illegality or unenforceability, without invalidating the remainder of this Agreement.

ECF No. 1-2 at PageID.63. By the Stockholder Agreement's terms, even if this Court held a given clause or provision was unenforceable, the rest of the contract remains in effect. *Id.* Therefore, regardless of the enforceability of the cost-sharing provision, the remainder of the arbitration provision is enforceable. DeLuso's assertion as to the impropriety of the cost-sharing provision will not prevent this Court from compelling arbitration.

To the extent DeLuso asks this Court to invalidate and sever the cost-sharing provision of the Stockholders Agreement under *Morrison v. Circuit City Stores, Inc.*, such a remedy is unavailable to him. 317 F.3d 646 (6th Cir. 2003). As the Sixth Circuit highlighted in *Stutler v. T.K. Constructors Inc.*, the *Morrison* line of cases, which limits the enforceability of cost-sharing provisions in the arbitration context,

is "limited by their plain language to the question of whether an arbitration clause is enforceable where *federal statutorily provided rights are affected.*" 448 F.3d 343, 346 (6th Cir. 2006) (emphasis added). Here, as in *Stutler*, "no federally protected interest is at stake" and thus DeLuso "must look to contract defenses available in [Delaware] rather than those found in federal common law." *Id.* Therefore, this Court will not invalidate the cost-sharing provision in section 25 of the Stockholders Agreement. Arbitration will be ordered as to Counts I and II of the verified complaint.

## IV. MOTION FOR PRELIMINARY INJUNCTION IN AID OF ARBITRATION

Because arbitration will be ordered, this Court now turns to Plaintiffs' motion for preliminary injunction in aid of arbitration. Specifically, Plaintiffs ask this Court to order specific performance of the noncompetition and nonsolicitation provisions of the Stockholders Agreement. ECF No. 12. DeLuso opposes the motion, ECF No. 16, primarily relying on Judge Murphy's denial of a TRO at the outset of this case. ECF No. 7. After weighing the preliminary injunction factors, this Court will deny the motion.

### A. Standard of Review

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction

- 26 -

is in the public interest." *Winter v. Nat. Res. Def. Couns., Inc.*, 555 U.S. 7, 20 (2008); *see also Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997). "To establish a likelihood of success, a plaintiff must, 'at a minimum, show serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued.'" *Livonia Prop. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 717 F. Supp. 2d 724, 731–32 (E.D. Mich. 2010) (quoting *Six Clinics Holding Corp., II*, 119 F.3d at 400).

### B. Analysis

On February 9, 2024, along with the verified complaint, Plaintiffs filed an *ex parte* motion for temporary restraining order (TRO) and preliminary injunction. ECF No. 4. On February 21, 2024, Judge Murphy denied the motion, finding that all factors weighed against Plaintiffs. ECF No. 7 at PageID.532. Now, Plaintiffs bring a second motion for preliminary injunction. ECF No. 12. Given the preliminary nature of Judge Murphy's findings—issued without hearing or a response from defendant—this Court is not bound by the February 2024 order under the law-of-the-case doctrine. *Wilcox v. United States*, 888 F.2d 1111, 1113–14 (6th Cir. 1989).

For the purposes of the motion for preliminary injunction, the parties agree that this Court should evaluate likelihood of success on the merits by applying Delaware law. ECF Nos. 12 (primarily relying on Delaware law); 16 at PageID.944

n.1 (accepting Plaintiffs' application of Delaware law for the purposes of the preliminary injunction motion). Under Delaware law, restrictive covenants are enforceable if they: (1) are reasonable in duration and scope, (2) advance legitimate economic interests, and (3) survive a balancing of the equities. *Kodiak Bldg. Partners, LLC v. Adams*, C.A. No. 2022-0311, 2022 WL 5240507, *4 (Del. Ch. Oct. 6, 2022). Delaware courts generally "favor[] the public interest of competition," but are "less searching" in their inquiries for covenants in the context of a business sale than in employment contracts. *Id.* (first quoting *Elite Cleaning Co., Inc. v. Capel*, No. Civ.A. 690–N, 2006 WL 1565161, at *4 (Del. Ch. June 2, 2005), and then citing *Tristate Courier & Carriage, Inc. v. Berryman*, No. C.A. 20574, 2004 WL 835886, at *10 (Del. Ch. Apr. 15, 2004)).

This Court has already determined that the Stockholders Agreement satisfies the general requirements for enforcement under Delaware contract law. *See* Parts II and III, *supra*. But the enforceability of the nonsolicitation and noncompetition covenants requires a closer look. Upon such review, both covenants appear to be overbroad to the point of unreasonableness.

The nonsolicitation clause, put simply, prevents DeLuso from (1) interfering with ECRA's current employees, (2) seeking to hire any former employees within a year of their departure from ECRA, and (3) soliciting or interfering with ECRA's relationships with "any current or former customer." ECF No. 1-2 at PageID.54.

Significantly, there is no durational component to the ban on solicitation of *former* clients, meaning that DeLuso could not attempt to sell to a buyer who, for example, has not had a business relationship with ECRA for more than a decade. *See id.* As written, this covenant appears unreasonable and unenforceable. Specifically, it seems to be more restrictive than necessary to "advance a legitimate economic interests" of ECRA or "survive a balancing of equities," both essential requirements for reasonableness. *Kodiak Bldg. Partners*, 2022 WL 5240507 at *4. As such, ECRA has failed to demonstrate likelihood of success on the merits as to the enforcement of the nonsolicitation clause.

As for the noncompetition clause, this Court agrees with Judge Murphy's concerns that the covenant may be too geographically broad for enforcement. ECF No. 7 at PageID.531. In concert with the geographic scope, the terms themselves likewise appear broader than necessary to advance ECRA's legitimate economic interests.

Plaintiffs ask this Court to read the geographic scope narrowly, as applying only in those 42 states where EWF conducts business or provides services or products. ECF No. 12 at PageID.862. However, even if this Court chose to read out the word "country" from the contract and interpret the limitation as a bar on competition in those 42 states, the remaining terms still cover too much activity, effectively creating a worldwide ban. As written, the non-competition covenant does

- 29 -

not merely prevent working for a similar business in the states where EWF does business. Rather, it prevents any direct *or indirect* involvement with any business engaged *directly or indirectly* in the business of ECRA or any of its subsidiaries (like EWF) or their affiliates, including almost *any work involving fencing, railing, or PVC products*. ECF No. 1-2 at PageID.54. As DeLuso points out, this would create a situation where something as generic as working the sales floor at a Home Depot, which presumably contains fencing, railing or PVC products *regardless of the state* would violate the covenant, as Home Depot stores certainly exist in at least one of the 42 states where EWF does business. ECF No. 16. Essentially, the covenant's overbreadth has the effect of rendering the geographic limitation a nullity. Such a broad prohibition on work would be unreasonable. *See Gordon Med., Inc. v. Vaughn*, C.A. No. 22-319, 2024 WL 1344481, at *15 (D. Del. Mar. 20, 2024) ("although the Delaware Court of Chancery has recognized that competitiveness may be a legitimate economic interest, that interest is not advanced by a non-competition covenant . . . that generally bans working in a similar business; the covenant must specifically ban working for the employer's competitors.").

On balance, the remaining factors weigh in favor of denial. An injunction would cause great harm to DeLuso; contrary to Plaintiffs' assertions, enforcement of the covenants as written *would* require him to stop working in *any capacity* at Barrette (a company which the parties agree is engaged in the business of providing

services or products relating to the manufacture or sale of fencing and is thus covered by the noncompetition clause). ECF No. 1-2 at PageID.54. Working in another department of Barrette would not remove DeLuso's work from the scope of the contract. *See id.* And preventing DeLuso from working throughout this litigation and arbitration would cause him significant harm. Additionally, enforcing the nonsolicitation covenant as written would burden DeLuso in that it could significantly limit his ability to seek new business for his employer, barring him from even reaching out to former clients no longer working with EWF. Preliminarily enforcing either contract would burden DeLuso.

Further, the public interest in competition far outweighs the public interest in "[e]nforcing a contract by its plain terms," especially where the contract itself may be unenforceable as written. ECF No. 12 at PageID.869; *see Kodiak Bldg. Partners*, 2022 WL 5240507 at *4 ("Delaware courts have favored the public interest of competition in their review of noncompetition agreements.") (quoting *Elite Cleaning Co., Inc.*, 2006 WL 1565161, at *4).

True enough, there is some risk of irreparable harm should DeLuso be allowed to continue competing with and soliciting customers from EWF. However, this Court echoes Judge Murphy's point that most of the harm in this case could be remedied with compensatory damages. ECF No. 7 at PageID.531. Further, all three of the other preliminary injunction factors weigh in favor of DeLuso. As such, the

harm to DeLuso, the public interest in competition, and the lack of likelihood of success on the merits all outweigh the risk of irreparable harm here. Therefore, this Court will deny the motion for preliminary injunction.

Plaintiffs argue that, if the agreements in question are found to be overly broad or unreasonable, this Court may "blue pencil" the agreement to make it reasonable and enter a preliminary injunction according to those more reasonable terms. ECF No. 12 at PageID.863. However, "[w]here noncompete or nonsolicit covenants are unreasonable in part, Delaware courts are hesitant to 'blue pencil' such agreements to make them reasonable." *Kodiak Bldg. Partners*, 2022 WL 5240507 at *4. This hesitancy is rooted in widely articulated concerns by Delaware courts about the incentives created by allowing companies to draft their contracts as broadly as possible so long as a court can rewrite them to be reasonable. *See id.* at *4 n.49. As one court so aptly put it, without "[t]he threat of losing all protection," employers are in a "no-lose" position when they do not have to "restrict themselves to reasonable clauses." *Del. Elevator, Inc. v. Williams*, C.A. No. 5996-VCL, 2011 WL 1005181 (Del. Ch. Mar. 16, 2011). Finally, the Delaware Supreme Court has specifically recognized that "[t]o blue-pencil a contract . . . is not an appropriate exercise of equitable authority in a preliminary injunction order." *C&J Energy Servs., Inc. v. Miami*, 107 A3d 1049, 1054 (Del. 2014).

Given the weight of Delaware authority against blue-penciling contracts at the

preliminary injunction stage, combined with this Court's decision to order arbitration, this Court will not blue-pencil the Stockholders Agreement and will deny the motion for preliminary injunction.

## V. CONCLUSION

Accordingly, it is **ORDERED** that:

1.  Defendants' Motion to Dismiss, ECF No. 8, is **DENIED**.

2.  Plaintiffs' Motion to Compel Arbitration, ECF No. 10, is **GRANTED**.

    a.  The parties are **ORDERED** to arbitrate Counts I and II of the Verified Complaint in accordance with the arbitration clause of the Stockholders Agreement.

    b.  This case is **STAYED** pending arbitration.

3.  Plaintiffs' Motion for Preliminary Injunction, ECF No. 12, is **DENIED**.


                                                    */s/Susan K. DeClercq*
                                                    SUSAN K. DeCLERCQ
                                                    United States District Judge

Dated: 12/10/2024